UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JHONNY ENRIQUE A.A.,[1]<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-06832-TLN-JDP<br>A# 232-819-509<br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Jhonny Enrique A.A.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 7.) Petitioner replied. (ECF No. 8.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner has been detained for six weeks without any hearing as to his detention. (ECF No. 1.) He is not subject to an order of removal. And he has no criminal history. (ECF No. 7-1 at 2.)

Petitioner has lived in the United States for the last three years. (ECF No. 1 at 9.) Petitioner entered the United States in 2023 without admission and without encountering immigration authorities. (*Id.* at 8.) After his entry, Petitioner applied for asylum with U.S. Citizenship and Immigration Services ("USCIS"). (*Id.* at 9.) Petitioner submitted his biometrics to USCIS on August 22, 2023. (*Id.*; ECF No. 1-1.) Thereafter, USCIS granted Petitioner employment authorization, valid through January 24, 2029. (ECF No. 1 at 9; ECF No. 1-2.) Petitioner's asylum application is still pending. (ECF No. 7-1 at 3.)

On July 30, 2026, at approximately 7:00 a.m., immigration authorities detained Petitioner outside his home while he was preparing to leave for work. (ECF No. 1 at 9; ECF No. 7-1 at 2.) Later that day, immigration authorities issued a warrant for Petitioner's arrest (ECF No. 7-2) and issued him a Notice to Appear, initiating removal proceedings against Petitioner (ECF No. 7-3).

Petitioner claims, and Respondents do not dispute, that Petitioner was arrested without pre-deprivation notice or a hearing. (ECF No. 1; ECF No. 7.) Petitioner has now been detained for six weeks without any post-deprivation custody hearing. (*Id.*) Petitioner challenges the constitutionality of his detention. (*Id.*)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its

protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention without pre-deprivation notice and a hearing violates the Fifth Amendment.[2] (ECF No. 1 at 9–11.) Respondents argue Petitioner was lawfully detained under 8 U.S.C. § 1226(a) and he has failed to show a due process violation.[3] (ECF No. 7.)

### A. Statutory Authority

The Court agrees with the parties that Petitioner's detention is governed by 8 U.S.C. § 1226(a). (ECF No. 1 at 7–8; ECF No. 7 at 1.) Individuals, like Petitioner, who are "present without admission who are apprehended in the interior of the United States," are subject to discretionary detention under 8 U.S.C. § 1226(a). *See Rodriguez Vazquez v. Bostock*, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). The Court discusses the procedural protections statutorily owed to Petitioner, below, in assessing his procedural due process claim.

### B. Fifth Amendment Claim

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due

---

[2] Finding relief warranted based on his Fifth Amendment procedural due process claim, the Court declines to address Petitioner's additional claims in favor of judicial economy.

[3] Respondents also argue that Petitioner must exhaust his administrative remedies before seeking habeas relief, specifically, they assert Petitioner must request a hearing before an immigration judge. (ECF No. 7 at 3.) After consideration of the factors articulated in *Puga v. Chertoff*, the Court finds prudential exhaustion is not required here. 488 F.3d 812, 815 (9th Cir. 2007). The Court has previously addressed this issue and hereby incorporates its reasoning as to prudential exhaustion from *Xianming H. v. Warden of the California City Det. Facility*, No. 1:26-CV-02543-TLN-CKD, 2026 WL 1283415, at *2 (E.D. Cal. May 11, 2026). Moreover, this Court will not delay vindication of Petitioner's constitutional rights and cause further irreparable harm to Petitioner. *See S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981) (finding waiver permissible "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury will result.").

process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). An individual's liberty interest may be strengthened over time. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Petitioner has a clear liberty interest in remaining free from detention. "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey*, 408 U.S. at 481–82). Petitioner has lived in the country for three years, during which time he has established a residence and obtained work. Petitioner has also applied for immigration relief and submitted his address and biometrics to the government. In turn, the government supported Petitioner's liberty by granting him a work permit valid through 2029. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Accordingly, Petitioner has a clear interest protected by the Due Process Clause.

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three

factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for nearly six weeks, separated from his community and unable to work. Accordingly, Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has not received any opportunity to be heard as to the justification of his detention, Respondents have not articulated a legitimate interest in detaining Petitioner, and Respondents failed to comply with the procedural protections required by 8 U.S.C. § 1226(a). Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to any order of removal; his immigration proceedings and asylum application are pending. Respondents do not claim that Petitioner is a danger to the public or a flight risk. Indeed, Petitioner voluntarily and affirmatively submitted his whereabouts and biometrics to the government. And he has no criminal history. Therefore, the risk that Petitioner is being detained without proper justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Respondents argue "the risk of erroneous deprivation and value of additional process is

small due to the procedural safeguards that Section 1226(a) provides," (ECF No. 7 at 6) but Respondents have failed to comply with those statutorily required safeguards. Under § 1226(a), a noncitizen may be arrested and detained only "on a warrant issued by the Attorney General . . . pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)"). Additionally, the INA's implementing regulations provide: "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the [noncitizen] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1) (emphasis added). Taken together, an administrative warrant must be issued prior to a noncitizen's arrest and it must be issued contemporaneously with, or subsequent to, initiation of removal proceedings, absent an exception. Here, Petitioner was arrested before a warrant was issued and before removal proceedings were instituted in violation of 8 U.S.C §1226(a) and 8 C.F.R. § 1236.1(b)(1). Thus, Respondents have failed to comply the § 1226(a)'s procedural safeguards in detaining Petitioner, in addition to failing to articulate a legitimate interest in detaining Petitioner. Respondents have also failed to provide any hearing post-deprivation to ameliorate risk that Petitioner was erroneously deprived of his liberty. Therefore, the Court finds the probative value of additional procedural safeguards here is high.

Third, and finally, the government's interest in detaining Petitioner without any hearing is nil, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing before a neutral decisionmaker. The U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case." (*See generally* ECF No. 7.)

Respondents did not provide Petitioner pre-deprivation notice, nor did Respondents provide Petitioner with a pre- or post-deprivation hearing in over six weeks of detention. Respondents thus violated the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is hereby GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Jhonny Enrique (A# 232-819-509) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions.
2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present.
3. Petitioner's Motion for Temporary Restraining Order (ECF No. 3) is DENIED as moot.
4. The Clerk of Court shall serve this Order on **California City Detention Facility**.

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATED: September 10, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE